FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ SEP 29 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ELSIE PAUL,

                           Plaintiff,

-against-

ERIK K. SHINSEKI, SECRETARY OF
VETERANS AFFAIRS,

                           Defendant.
------------------------------------------------------------x

NOT FOR
PUBLICATION
MEMORANDUM &
ORDER
09-CV-1591 (CBA) (LB)

AMON, United States District Judge:

      Erik K. Shinseki, the Secretary of Veterans Affairs, moves for dismissal or transfer for want of jurisdiction; dismissal or transfer for improper venue; or, alternatively, partial summary judgment in this employment discrimination lawsuit. Elsie Paul, who was a social worker at a Department of Veterans Affairs duty post in Los Angeles, California, has sued the Secretary and alleged that her supervisors in Los Angeles fired her, failed to promote her, and retaliated against her because of her race, age, and physical disability, and also failed to accommodate her physical disability. The Secretary moves to dismiss or transfer Paul's suit to California and argues that: (1) the Tucker Act vests exclusive jurisdiction of this suit, which the Secretary says is one to invalidate a settlement agreement between the Department and Paul, in the Court of Federal Claims, 28 U.S.C. § 1491(a); (2) if the Court has subject matter jurisdiction, venue over the race and disability claims is proper only in California, 42 U.SC. §794a(a)(1); and (3) the Court should transfer this suit to California even if venue is proper in this district, 28 U.S.C. § 1404. Alternatively, the Secretary asks for summary judgment on Paul's age discrimination claim, arguing that Paul failed to administratively exhaust that claim.

1

The Court has jurisdiction of Paul's suit but venue for the race and disability claims lies exclusively in California. The Court transfers those claims, as well as Paul's age discrimination claim, to the U.S. District Court for the Central District of California.

BACKGROUND

In May 2005, the Department hired Paul, who is black, to work at its West Los Angeles Healthcare Center in Los Angeles, California. (Pl. Resp. at 1.) Paul, who was then 45 years old and working at the Interfaith Medical Center in New York, moved her family to California to accept this position. (Compl. Add. at 1). Paul began work in Los Angeles in June 2005 as a probationary employee, which meant that for one year the Department would monitor Paul to determine whether she was qualified for federal service as a social worker. (Def. Aff. Ex. A; Pl. Resp. at 1.)

On May 22, 2006, the Department informed Paul that it was terminating her probationary employment. (Pl. Resp. at 1.) Paul alleges that she was two weeks shy of receiving "tenure" when she was fired "without any warning that anything was wrong with [her] job performance." (Id.) The Department's termination letter, which Paul has attached to her complaint, states that the Department terminated Paul after the "Chief, Social Work Service, . . . recommended that [Paul] be terminated from [her] position due to excessive absences and inappropriate conduct in [her] relationships with [her] co-workers." (Compl. at 25.) The letter informed Paul that her discharge was effective June 6, 2006. (Id.)

On May 30, 2006, Paul contacted the Department's Equal Employment Office ("EEO") in Los Angeles and alleged that she had been fired because of her race and disability. She may have also have alleged that she was fired because of her age, but the parties disagree about this. Paul's informal administrative counseling ended on July, 19, 2006, and the EEO

2

told Paul that she had the right to file a formal discrimination complaint. (Def. Aff. Ex. D.) Paul did file a discrimination complaint, which alleged that on May 22, 2006, employees at the West Los Angeles Healthcare Center illegally terminated her because of her race, age, and physical disability. (Id. Ex. C.) On August 31, 2006, the EEO confirmed Paul's complaint by letter, but for some reason stated that Paul had complained only of race and disability discrimination. (Id. Ex. D.) Paul did not protest this description of her complaint, even though the letter told her that she must complain or be bound by the description of her accepted claims. (Id. Ex. K.) That same August 31 letter also informed Paul that the EEO would open a formal investigation into her claims of discrimination and that Paul could request a hearing on her complaint before an administrative judge appointed by the Equal Employment Opportunity Commission ("EEOC"). (Id. Ex. D.) In February 2007, Paul asked for a hearing. (Id. Ex. G.)

At some point during this hearing, Paul decided to settle her complaint against the Department and she and the Department executed a formal settlement agreement on February 21, 2008. (Id. Ex. I.) The settlement agreement provided that it "resolve[d] . . . all matters raised by Complainant in her July 26, 2006 complaint of discrimination pending before the Equal Employment Opportunity Commission." (Id. Ex. E.) As part of the settlement, Paul agreed to "voluntarily withdraw[], in their entirety, all discrimination complaints, EEO complaints and other causes of action now pending against [the Department]." (Id.) Paul also "wavie[d] her right to pursue future cause of action against the [Department] based on facts in existence as of the date of . . . this Agreement." (Id.) Paul did retain the right to filed claims for breach of the settlement agreement and workers compensation benefits. (Id.) The Department, for its part, agreed "to revise Complainant's Notification of Personnel Action . . .

3

to reflect that she resigned from the [Department] for personal reasons" and to "remove the Termination of Time Limited Appointment letter, along with any and all evidence of the termination, including information, notes, personnel actions, and any related materials, from Complainant's Official Personnel Folder." (Id.) The agreement provided Paul with 21 days to consider whether to agree to the settlement, informed her of her right to consult an attorney before executing the agreement, and also informed her of her right to revoke the agreement within seven days of the date upon which it became effective. (Id.) According to the agreement, Paul and the Department signed it "freely and voluntarily" and only after each had "thoroughly reviewed the entire Agreement and underst[ood] its provisions." (Id.)

In November and December 2008, Paul wrote the Department's EEO to tell it that she wanted to reopen her case. (Compl. at 27–30.) She said that she had signed the settlement agreement without legal advice and without understanding the "repercussions of the agreement." (Id. at 27.) She also alleged that the Department had breached the settlement agreement by providing negative information to employers with whom she had been seeking work. (Id. at 29.) Paul asked the Department to reopen her case and to transfer it to New York, where she had moved after she was terminated. (Id.) On December 18, the Department responded by letter. (Id. at 13–18.) The EEO characterized Paul's allegations as allegations of coercion in the making of the agreement and breach in performance and rejected them both. (Id. at 13.) It explained that Paul's attack on the agreement was untimely (id. at 14) but that even if she had timely complained, her claims lacked merit because there was no evidence of coercion and no evidence that the Department had not complied with the agreement, which only required that it purge evidence of Paul's termination from her personnel file (id. at 15). The December 18 letter also informed Paul that she had a right to

4

appeal the denial of her coercion and breach claims and that she could also file a civil action challenging the denial of those claims. (Id. at 16–17.)

Paul then filed this lawsuit in April 2009. The complaint purports to assert claims of race discrimination under Title VII, 42 U.S.C. § 2000e et seq.; disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq.; and age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (Id. at 1.) Because federal employees cannot assert claims under the Americans with Disabilities Act, Rivera v. Heyman, 157 F.3d 101, 103 (2d Cir. 1998), and because Paul is proceeding pro se, the Court construes her second claim as alleging a violation of the Rehabilitation Act, 29 U.S.C. § 701 et seq. See Kemer v. Johnson, 900 F. Supp. 2d 677, 681 (S.D.N.Y. 1995) (construing pro se complaint alleging claim under the Americans with Disabilities Act as asserting a claim under the Rehabilitation Act). The complaint names Shinseki as the sole defendant and asserts that Paul was illegally terminated from the West Los Angeles Health Center on account of her race, age, and physical disability "two weeks prior to becoming permanent in [her] title with no warnings of issues with workload and after returning from a sick leave." (Id. at 2–3.) The complaint's addenda, to which the complaint directs readers interested in "additional details," states that Paul "can prove that the agency not only discriminates against [her] as a black person with a reported disability but the agency used their power carelessly to terminate [her] during [her] probation because they can." (Id. Add. at 1.) The complaint also alleges that the Department failed to accommodate Paul's physical disability. (Id. at 2–3.) According to the complaint, Paul seeks relief in the form of back pay, pain and suffering damages in connection with her inability to secure a new job in New York, damages in connection with student loans that Paul says she has not been able to pay for want

of work, and a job with the Department in New York. (Id. at 4.)

## DISCUSSION

The Secretary has moved to dismiss or transfer Paul's entire suit, or, alternatively, for summary judgment on Paul's age discrimination claim. The Court has jurisdiction of Paul's complaint but transfers her race and disability claims because venue for those claims lies exclusively in California. The Court, as an exercise of its discretion, also transfers Paul's age discrimination claim to California.

### Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1) the Court must dismiss a suit if it "lacks statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). When reviewing a motion to dismiss under Rule 12(b)(1), the Court accepts as true all material allegations in the complaint and draws all reasonable inferences in favor of the nonmoving party. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009). But the Court need not accept legal conclusions couched as factual allegations. Id. The party asserting jurisdiction, here Paul, bears the burden of establishing its existence. Id.

The Secretary argues that this Court lacks jurisdiction of Paul's suit. He argues that although Paul purports to assert employment discrimination claims under federal law, she is really alleging that the Department has breached the settlement agreement, a contract. And plaintiffs alleging breach of contract against the United States (and, like Paul, requesting damages in excess of $10,000) must file suit in the Court of Federal Claims. See Greenhill v. Spellings, 482 F.3d 569 (D.C. Cir. 2007) (suit for damages against Department of Education alleging breach of settlement agreement belongs in Court of Federal Claims); Holmes v. Dep't of Navy, 583 F. Supp. 2d 431 (W.D.N.Y. 2008) (suit for damages alleging breach of

settlement agreement belongs in Court of Federal Claims). The Secretary correctly describes the law, but not Paul's complaint.

Paul's complaint does not assert a claim for breach of the settlement agreement between her and the Department. The first page of her complaint—a form employment discrimination complaint with listed state and federal statutes that plaintiffs can check as applicable—plainly asserts claims under several federal antidiscrimination statutes. Cf. Greenhill, 482 F.3d at 572–73 (only "two isolated statements in over 100 pages of documents" that were attached to complaint arguably suggested that plaintiff was asserting a federal discrimination claim). Moreover, Paul has asserted in her pro se opposition to the Secretary's motion for dismissal and summary judgment "that the case is about violation of civil rights under Title VII in employment and not about the breach of the settlement agreement." (Pl. Opp. at 9.) And she has attached to her opposition motion exhibits that detail not the Department's alleged breach of the settlement agreement, but her coworkers' alleged pre-agreement discrimination against her. Paul has pleaded claims of employment discrimination, and her pleadings control the question of jurisdiction in this setting. Greenhill, 482 F.3d at 573. If a federal court reaches the merits of Paul's claims, the Secretary will be able to assert the settlement agreement as a defense and Paul will have to explain why that agreement should not bar her suit. E.g., Livingston v. Adirondack Beverage Co., 141 F.3d 434 (2d Cir. 1998). But that a defense to Paul's discrimination claims will require an evaluation of a settlement agreement between Paul and the federal government does not render jurisdiction in this Court improper. Wright v. Foreign Serv. Grievance Bd., 503 F. Supp. 2d 1163, 177 n.8 (D.D.C. 2007); cf. Domnister v. Exclusive Ambulette, Inc., 607 F.3d 84, 88 (2d Cir. 2010) (no federal jurisdiction for removal purposes simply because

federal preemption of plaintiff's state law claims is a defense to the suit). This Court has jurisdiction of Paul's suit.

## Venue: Race and Disability Claims

As a general matter, in a case involving multiple claims, the plaintiff must establish that venue is proper as to each individual claim. Sollow Building Co. v. ATC Assocs., Inc., 175 F. Supp. 2d 465, 469 (E.D.N.Y. 2001). In determining whether a plaintiff has established venue, the Court must accept as true the allegations contained in the complaint, but it need not accept those allegations that are contradicted by the defendant's affidavits. EPA ex rel. McKeown v. Port Auth. of N.Y. & N.J., 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001). The plaintiff bears the burden of proving that venue is proper. Id. If the plaintiff cannot meet her burden, the Court can either dismiss or transfer the case to a district in which venue lies. The choice between dismissal and transfer is firmly committed to the sound discretion of the district court. Minnette v. Time Warner, 977 F.2d 1023, 1026 (2d Cir. 1993).

The Secretary moves for dismissal or transfer asserting that venue for Paul's race and disability claims does not lie in this district. Fed. R. Civ. P. 12(b)(3). The Secretary contends that the specific venue provision that governs Title VII and Rehabilitation Act claims requires that Paul's claims under those Acts be brought in California (and maybe Missouri, where the Department stores some employment records). And although venue in this district is proper for Paul's age discrimination claim, the Secretary argues that this Court should not exercise "pendent venue" over Paul's race and disability discrimination claims. The Court finds these arguments persuasive.

Paul cannot litigate her race and disability claims in this district. A specific statutory provision, 42 U.S.C. §20003-5(f)(3), which is codified in Title VII and incorporated by the

Rehabilitation Act, governs venue for claims under both Title VII and the Rehabilitation Act. Bolar v. Frank, 938 F.2d 377, 378 (2d Cir. 1991); see also Templeton v. Veterans Admin., 540 F. Supp. 695, 696 (S.D.N.Y. 1982) ("Claims under Title VII are strictly governed by these venue provisions, rather than by the regular venue statute."). That venue provision requires (with an exception not relevant here) that a suit alleging violations of either Title VII or the Rehabilitation Act be brought "[1] in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 20003-5(f)(3).

Venue in New York is not proper under any of these three sub-provisions. First, California is the state "in which the unlawful employment practice" of which Paul complains was allegedly committed. Paul worked for the Department in California, apparently had problems with her co-workers in California, was terminated while she was in California by Department employees in California, and complained to an EEO in California. See Minnette, 977 F.2d at 1026; Cook v. UBS Fin. Servs., No. 05-CV-8842, 2006 WL 760284, at *2 (S.D.N.Y. Mar. 21, 2006) (no venue in New York because none of the employees or supervisors allegedly involved in the challenged employment decision worked in New York); Sommer v. Wood Dining Servs., No. 02-CV-4967, 2002 WL 31495969, at *1 (E.D.N.Y. Nov. 5, 2002) (venue over employment discrimination claim proper in Virginia because that is where defendant employed plaintiff). Second, there is no dispute that the Department stores and manages Paul's employment records in Los Angeles and St. Louis, Missouri. (Pl. Opp. Ex. 11; Def. Aff. Ex. J.) Consequently, Paul cannot use the location of the storage or

9

administration of her records as a basis for suit in New York. See Minnette, 997 F.2d at 1026; Cook, 2006 WL 760284, at *4; Sommer, 2002 WL 31495969, at *1. Third, Paul has offered no reason (e.g. contemplated transfer) to think that the Department, had it not terminated her, would have continued to employ her anywhere other than Los Angeles, where she lived and worked at the time of her firing. Spriggs, 2006 WL 1304861, at *9; Ayuso v. Reno, No. 97-CV-2802, 1998 WL 34190552, at *1 (E.D.N.Y. Nov. 3, 1998). Paul's only real response to the venue arguments of the Secretary is that the Secretary has resources that permit him to litigate this matter anywhere, and she does not, so this Court should permit her to litigate in Brooklyn, where she now lives. But the application of the specific and mandatory venue provisions of Title VII and the Rehabilitation Act does not turn on the resources of individual plaintiffs.

The Court declines to use Paul's age discrimination claim, which she can file in this district, 28 U.S.C. § 1391(e) (generally, civil action against U.S. agency can be filed in any district in which the agency resides), to anchor venue for Paul's other claims. Although, as the Court has said, a plaintiff usually must establish that venue is proper with respect to each of the claims in her complaint, courts sometimes hold, under the doctrine of pendent venue, "that when two or more claims amount to a single cause of action with two grounds for relief, proper venue as to one claim will support adjudication of both claims." Lengacher v. Reno, 75 F. Supp. 2d 515, 518 (E.D. Va. 1995). But courts have generally avoided using the doctrine of pendent venue to override Congress's decision to require Title VII and Rehabilitation Act claims to be brought in accordance with 42 U.S.C. § 20003-5(f)(3). See, e.g., Bartel v. Fed. Aviation Admin., 617 F. Supp. 190, 198 n.33 (D.D.C. 1985) ("[T]he Court lacks the authority to ignore the congressional intent to limit venue by finding pendent

venue."). The Court thinks this practice is sound and declines to exercise pendent venue to accept Paul's race and disability claims.

## Transfer of All Claims

The Court transfers Paul's race, disability, and age discrimination claims to the Central District of California, where venue lies for all three claims.

Where, as here, a district court finds venue improper with respect to a given claim, it may as a matter of discretion transfer rather than dismiss the improperly venued claim where transfer is in the interest of justice. 28 U.S.C. § 1406(a); see also Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 435 (2d Cir. 2005). The Court concludes that transfer of the race and disability discrimination claims is in the interest of justice because, although the parties have not addressed the issue, the possibility exists that Paul may encounter a limitations bar if forced to refile in California. As a matter of prudence, then, the Court declines to dismiss those claims. See Daniel, 428 F.3d at 435 ("A 'compelling reason' for transfer is generally acknowledged where a plaintiff's case, if dismissed, would be time-barred on refiling in the proper forum."). Moreover, this Court cannot say definitively that transfer would involve a waste of judicial resources. See Daniel, 428 F.3d at 435 (courts should not "'waste judicial resources transferring a case that is clearly doomed.'" (quoting Phillips v. Seiter, 173 F.3d 609, 610 (7th Cir. 1999)). Although the Secretary may be able successfully to assert the settlement agreement as a defense to any or all of Paul's discrimination claims, this Court lacks sufficient information to conclude that it is a certainty the Secretary will prevail on that defense. Livingston, 141 F.3d at 437–38 ("[T]he validity of a release is a peculiarly fact-sensitive inquiry.").

The Court also transfers Paul's age discrimination claim, even though venue for that

claim lies in this district. 28 U.S.C. § 1404(a). "The determination whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court." Filmline (Cross-Country) Productions, Inc. v. United Artists Corp., 865 F.2d 513, 520 (2d Cir. 1989). In making this determination, the district court should consider whether the following considerations favor disturbing the plaintiff's choice of forum: (1) convenience of the witnesses; (2) convenience of the parties; (3) location of relevant documents and ease of access to sources of proof; (4) locus of operative facts; (5) availability of process to compel witnesses; (6) relative means of the parties; (7) forum's familiarity with the governing law; (8) weight accorded plaintiff's choice of forum; and (9) trial efficiencies and the interest of justice. E.g., In re Collins & Aikman Corp. Sec. Litig., 438 F. Supp. 2d 392, 394–95 (S.D.N.Y. 2006). Here, Paul's relative lack of litigation resources to devote to this case and her right as plaintiff to choose where she litigates both favor litigating this case in New York. But the other considerations (save the convenience of the parties and the forum's familiarity with the governing law, which are neutral) strongly favor litigating this case, which has everything to do with a Department duty post and its employees in Los Angeles and nothing to do with New York, in the Central District of California. Moreover, the Court observes that its decision to ensure that all of Paul's discrimination claims are litigated together in one action is consistent with accepted practice. See Saran v. Harvey, No. Civ.A. 04-1847 9JDB0, 2005 WL 1106347, at *4 (D.D.C. May 9, 2005) (explaining that "courts have consistently transferred the entire case, pursuant to 28 U.S.C. § 1406(a), rather than split a case apart" where venue is improper under the specific venue provision that governs Title VII and the Rehabilitation Act). If Paul wants to continue to press this suit in federal court, she must do so in California.

## CONCLUSION

In sum, the Court has jurisdiction of Paul's race and disability discrimination claims, but venue is not proper in this district. The Court transfers those claims, as well as her age discrimination claim to California. The Clerk of the Court is directed to transfer this entire action to the Central District of California.

SO ORDERED.

DATED: Brooklyn, New York
September 27, 2010

s/Carol Bagley Amon
Honorable Carol Bagley Amon
United States District Judge